RICHARD L. KELLNER, ESQ. (NV #8139)
rlk@kbklawyers.com
KABATECK BROWN KELLNER, LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000 / Facsimile: (213) 217-5010

BILLIE-MARIE MORRISON, ESQ. (NV #7689)
bmorrison@ckplaw.com
CRAIG P. KENNY & ASSOCIATES
501 S. 8th Street
Las Vegas, NV 89101
Tel: (702) 380-2800 / Facsimile: (702) 380-2833

MAXWELL M. BLECHER (Admitted Pro Hac Vice)
mblecher@blechercollins.com
COURTNEY A. PALKO (Admitted Pro Hac Vice)
cpalko@blechercollins.com
BLECHER COLLINS PEPPERMAN & JOYE, P.C.
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Tel: (213) 622-4222 / Facsimile: (213) 622-1656

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE VACCINE CENTER LLC, d/b/a THE VACCINE CENTER AND TRAVEL MEDICINE CLINIC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN NEVADA HEALTH DISTRICT; GLAXOSMITHKLINE LLC, a Delaware limited liability company; APEXUS, INC., a Delaware corporation; DOES I - X and ROE CORPORATIONS I - X, inclusive,<br><br>Defendants. | CASE NO. 2:12-cv-01849-JCM-NJK<br><br>**AMENDED COMPLAINT FOR:**<br><br>1. **Price Discrimination;**<br>2. **Receipt of Discriminatory Prices;**<br>3. **Unfair Trade Practices;**<br>4. **Aiding and Abetting Liability; and**<br>5. **Intentional Interference with Prospective Economic Advantage**<br><br>**JURY TRIAL DEMANDED** |

1
AMENDED COMPLAINT

Plaintiff The Vaccine Center LLC d/b/a The Vaccine Center and Travel Medicine Clinic ("Plaintiff" or "The Vaccine Center"), by and through its attorneys of record, complains and alleges against Defendants GlaxoSmithKline LLC ("GSK"), Apexus, Inc. ("Apexus"), and Southern Nevada Health District ("SNHD") (collectively, "Defendants") as follows:

## I.

## JURISDICTION AND VENUE

1. This action is instituted in part under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover the damages caused by Defendants and to secure injunctive relief against Defendants for their past and continuing violations of the Robinson-Patman Act as alleged in the First and Second Claims for Relief herein.

2. This Court has original and exclusive jurisdiction over the subject matter of this action under 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337. This Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Further, the unlawful acts alleged herein were performed and occurred in material part within this District.

## II.

## NATURE OF THE ACTION

3. This antitrust action arises out of Defendants' abuse of a federal drug program known as the "340B Prime Vendor Program" (also referred to herein as the "340B Program" or the "Program") that Congress created to serve as a safety-net for the poor and the indigent.

4. Although its mission as a federally qualified safety-net provider is to provide services to the poor and indigent, SNHD operates a full-fledged commercial business that generates millions of dollars in revenue annually by competing against private clinics and doctors in markets for fee-based immunization services to the adult non-Medicaid population. It unlawfully obtains vaccines from GSK under the 340B Program at sharply reduced prices and resells those vaccines to the general population in violation of the laws governing the Program, as well as Supreme Court authority. Because it is able to obtain vaccines from GSK at prices that are much lower than private clinics and doctors, SNHD has been able to crush private-

1  sector competition, drive private medical clinics and doctors out of business, and monopolize
2  markets for fee-based immunization services.

3      5.    Meanwhile, as SNHD diverts manpower and resources to the expansion of its
4  fee-based immunization services, it has failed to fix the dire situation facing the state's children.
5  In 2011, Nevada ranked 45th out of the 50 states in immunization rates for toddlers.  As of June
6  2011, the percentage of Clark County children under 36 months old who have received the
7  Center for Disease Control and Prevention's (CDC) recommended schedule of vaccinations was
8  down to 53.14 percent.  While almost all government agencies in Nevada ran large deficits in
9  2011 and had to cut back government services, SNHD reported a $35 million dollar cash
10 reserve (surplus) in 2011.  Simply put, SNHD has failed to live up to its mission and has
11 breached the public trust.

12     6.    Through this action, The Vaccine Center seeks to hold Defendants accountable
13 for their abuse and diversion within the 340 Program and to enjoin their unlawful activities.  It
14 brings causes of action against Defendants for price discrimination under the Robinson-Patman
15 Act and various state law claims.

## III.

## THE PARTIES

### The Vaccine Center

19     7.    Plaintiff The Vaccine Center LLC d/b/a The Vaccine Center and Travel
20 Medicine Clinic ("Plaintiff" or "The Vaccine Center") is, and at all relevant times has been, a
21 Nevada limited liability company with its principal place of business in Las Vegas, Nevada.

22     8.    The Vaccine Center provides comprehensive immunization services to infants,
23 children and adults, including all vaccines available in the United States for work, school, travel
24 and general health.  It is the largest private travel medicine clinic in Nevada.

25     9.    At all relevant times, The Vaccine Center has purchased and continues to
26 purchase vaccines from GSK either through a buying group called Medical Mart or directly
27 from GSK.

**Apexus, Inc.**

10. Upon information and belief, Plaintiff alleges that Defendant Apexus, Inc. ("Apexus") is, and at all relevant times has been, a Delaware corporation with its principal place of business in Irving, Texas. Apexus conducts business throughout the United States, including the State of Nevada and within this judicial district.

11. Upon information and belief, Plaintiff alleges that, since June 2003, Apexus or its predecessor-in-interest has managed the 340B Program pursuant to contracts awarded by the U.S. Health Resources and Services Administration ("HRSA"). In this capacity, Apexus was and is responsible for the negotiation of pharmaceutical pricing and the establishment of a distribution network for participating public hospitals, community health centers, and other safety-net health care providers electing to join the 340B Program.

12. According to its website, Apexus is presently serving over 14,200 safety-net providers through the 340B Program.

**GlaxoSmithKline LLC**

13. Upon information and belief, Plaintiff alleges that Defendant GlaxoSmithKline LLC ("GSK") is, and at all relevant times has been, a Delaware limited liability company with its principal place of business in Philadelphia, Pennsylvania. GSK conducts business throughout the entire world, including the State of Nevada and within this judicial district.

14. Upon information and belief, Plaintiff alleges that GSK is a research-based pharmaceutical company with offices in over 100 countries. Among other things, it markets over 30 vaccines worldwide to prevent illnesses such as hepatitis A, hepatitis B, diphtheria, tetanus, whooping cough, measles, mumps, rubella, polio, typhoid, influenza and bacterial meningitis.

15. Upon information and belief, Plaintiff alleges that GSK has provided and continues to provide vaccines to public health agencies, including SNHD, at substantially reduced prices negotiated by Apexus as "value-added" products under the 340B Drug Pricing Program. Contemporaneously with those sales to public health agencies, GSK sells the same vaccines to The Vaccine Center and other private clinics at the higher market prices.

### Southern Nevada Health District

16. Upon information and belief, Plaintiff alleges that Defendant Southern Nevada Health District ("SNHD") is, and at all relevant times has been, a public health agency existing under the laws of Nevada and is authorized to conduct business in Clark County, Nevada.

17. According to its website, SNHD's stated mission is to "[t]o protect and promote the health, the environment and the well being of Southern Nevada residents and visitors." It is one of the largest local public health organizations in the U.S. and has more than 500 employees.

18. Upon information and belief, Plaintiff alleges that on or about January 25, 2008, SNHD entered into a 340B Prime Vendor Participation Agreement with Apexus, which enabled SNHD to purchase certain drugs from drug manufacturers at discounted prices negotiated by Apexus.

### Other Doe Defendants

19. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants herein designated as Does I - X and Roe Corporations I - X are unknown to the Plaintiff at this time, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of said defendants is responsible in some manner for the events and happenings and proximately caused the injuries and damages herein alleged. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained.

20. All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

### IV.
### FACTUAL BACKGROUND
### Defendants' Abuse Of The 340B Drug Program

21. Under the Robinson-Patman Act, it is unlawful for a seller engaged in commerce

1  to discriminate in price between different purchasers of like commodities where "the effect . . .
2  may be to substantially lessen competition."  15 U.S.C. § 13(a).  Further, it is well settled that
3  "the sale of pharmaceutical products to state and local government hospitals for resale in
4  competition with private pharmacies is not exempt from the proscriptions of the Robinson-
5  Patman Act."  *Jefferson County Pharm. Assn. v. Abbott Labs.*, 460 U.S. 150, 171 (1983); *see*
6  *also Abbott Labs. v. Portland Retail Druggists Assn., Inc.*, 425 U.S. 1 (1976).

7       22.     In violation of the Robinson-Patman Act and these Supreme Court decisions,
8  GSK sells vaccines to SNHD and other entities at discriminatory prices negotiated by Apexus
9  that are substantially lower than can be obtained by private clinics and doctors on the free
10  market.  SNHD then unlawfully uses the vaccines that it purchases from GSK for resale in
11  competition with private clinics like The Vaccine Center.

12       23.     Upon information and belief, Plaintiff alleges that, in particular, SNHD has
13  purchased and continues to purchase Hepatitis A, Hepatitis B and Twinrix (Hepatitis A/B)
14  vaccines from GSK at prices substantially below the prices paid by The Vaccine Center to GSK
15  for these same vaccines.

16       24.     Based on its own records and information obtained from SNHD in response to
17  Freedom of Information Act ("FOIA") requests, Plaintiff has compiled the following chart to
18  provide examples of the different prices charged to SNHD and The Vaccine Center for
19  contemporaneous purchases of Hepatitis A and Twinrix vaccines from GSK.  The chart also
20  shows the resale prices charged by SNHD and The Vaccine Center to the adult non-Medicaid
21  population.

|  | Vaccines Obtained by SNHD from GSK | | | Vaccines Obtained by The Vaccine Center from GSK | | |
|---|---|---|---|---|---|---|
| Vaccine | Estimated Purchase Date[1] | Reported Purchase Price Per Dose | Reported Resale Price | Purchase Date | Purchase Price Per Dose | Resale Price |
| Hepatitis A | April 2012 | $22.02 | $40.00 to $50.00 | April 2012 | $62.34 | $84.00 |
| Twinrix | April 2012 | $50.26 | $70.00 | April 2012 | $90.09 | $139.00 |

[1] The estimated purchase date is based on the date of SNHD's response to Plaintiff's FOIA request.

25. Additionally, SNHD has purchased and/or continues to purchase other vaccines from GSK, including Hepatitis B, Tdap and HPV, at substantially lower prices than The Vaccine Center has purchased and/or continues to purchase

26. Upon information and belief, Plaintiff alleges that SNHD has been able to obtain such discounted vaccines from GSK because Defendants have abused and diverted resources from the 340 Program. The Program was established in response to the passage of Section 340B of U.S. Public Law 102-585, the Veterans Health Care Act of 1992. It is administered by the Office of Pharmacy Affairs of the Health Resources and Services Administration ("HRSA").

27. As Apexus was recently advised in a March 5, 2012 letter sent to it by several members of Congress, "[t]he original intent of the [340B] [P]rogram was to extend the Medicaid drug discount to the most vulnerable patients receiving services at Public Health Service clinics, including individuals who are, medically uninsured, on marginal incomes, and have no other source to turn to for preventive and primary care services." Accordingly, the Program provides certain "covered entities" (including SNHD) with access to outpatient prescription drugs at or below statutorily defined ceiling prices.

28. Although vaccines are not covered under the Program, Apexus and GSK have conspired to use the Program to agree on reduced prices for vaccines on the ostensible ground that vaccines are "value added products." Indeed, Apexus advertises on its website that one of its three "primary roles" is to provide "other value-added pharmacy related products and services" to covered entities.

29. However, there is no such thing as "value added products" under the laws or regulations that govern the Program. Moreover, when writing the 340B Program, Congress specifically chose to exclude vaccines from coverage. Thus, Defendants are not permitted to agree amongst themselves to include vaccines under the Program.

30. Additionally, SNHD is not permitted to sell discounted drugs to individuals who are not its patients. By law, a covered entity that obtains discounted drugs under the Program is prohibited from reselling or otherwise transferring those drugs to individuals who do not meet

1   the definition of a "patient."[2]  42 U.S.C. § 256b(a)(5)(B).  Indeed, the HRSA expressly states on

2   its website that individuals may receive discounted drugs under the Program "[a]s long as they

3   are patients of the covered entity."  Moreover, the HRSA states on its website that "[c]overed

4   entities are required not to resell or otherwise transfer outpatient drugs purchased at the

5   statutory discount to an individual who is not a patient of the covered entity."

6          31.   Nevertheless, Apexus and GSK have improperly used the 340B Program to sell

7   discounted vaccines and they encourage covered entities to resell those vaccines to non-patients.

8   Apexus asserts on its website that "[v]accines are classified as value added products under the

9   [340B Program] (not an 'outpatient covered drug'), the vaccines may be utilize[d] in

10  community flu drives, employee health programs and other areas in the community."

11         32.   Such abuse and diversion from the 340B Program has not gone unnoticed.  In a

12  March 2011 public report, the Government Accountability Office ("GAO") warned that federal

13  oversight of the Program was "inadequate" and the risk of improper diversion of 340B drugs

14  has increased significantly.  It reported that "[p]articipants have little incentive to comply with

15  program requirements, because few have faced sanctions for non-compliance" from the HRSA.

16  It further reported that "drug manufacturers[] have raised questions about covered entities'

17  generation of revenue and whether they are using it in ways consistent with the purpose of the

18  program."  And it wrote that "covered entities may be inappropriately claiming 340B discounts

19  from drug manufacturers or qualifying for the program when they should not be, potentially

20  increasing the likelihood that manufacturers will offset providing lower prices to covered

21  entities with higher prices for others in the health care system."

22         33.   In the wake of this report by the GAO, Congress conducted its own investigation

23  into abuse and diversion of the 340B Program.  In a March 2012 letter sent to Apexus, several

24  members of Congress demanded information from Apexus about its activities and its "value

25  added products."

---

[2] For the purposes of the 340B Program, the term "patient" is defined at 61 Federal Register 207 (24 October 1996), p. 55157.

34. In addition to the GAO report and the congressional investigation, several articles published in prominent newspapers in Nevada have placed SNHD on notice that the discounted prices that it received from GSK under the Program are unlawful. In fact, news organizations have asked SNHD to comment on the GAO report and allegations that it is improperly using its safety-net provider classification as a competitive weapon against private-sector medical clinics.

35. Upon information and belief, Plaintiff alleges that, despite being on notice of their unlawful conduct, Defendants have continued to engage in their conspiracy. Further, each of them benefit from doing so.

36. Upon information and belief, Plaintiff alleges that GSK uses these illegal price discounts to capture a large percentage of the market share of vaccines sold to safety-net providers such as SNHD.

37. Upon information and belief, Plaintiff alleges that as a result of the Defendants' conspiracy, Apexus benefits because it is able to expand the scope of the services that it provides to covered entities.

38. Upon information and belief, Plaintiff alleges that SNHD also benefits from this conspiracy because it is able to obtain vaccines from GSK at discounted prices, which provides it with an unfair competitive price advantage over private clinics and physicians such as The Vaccine Center.

**Plaintiff's Injuries And Injury To The Market**

39. Although SNHD is classified under federal law as a "safety-net provider," it competes with private medical clinics and doctors in markets for fee-based immunization services to the adult non-Medicaid population.

40. Upon information and belief, Plaintiff alleges that, for the purposes of Plaintiff's antitrust claims, the relevant geographic market is Southern Nevada. The Vaccine Center has two physical locations in Las Vegas and provides immunization services to patients from the entire Southern Nevada region. Similarly, several of SNHD's physical locations in Las Vegas and Clark County offer immunization services to adults and service patients from the entire

1  Southern Nevada region.

2      41.    Upon information and belief, Plaintiff alleges that, for the purposes of Plaintiff's
3  antitrust claims, there are four relevant product markets for the adult, non-Medicaid population:
4  (1) travel vaccines offered to walk-in patients who require vaccinations for overseas travel; (2)
5  occupational vaccinations offered to private businesses and government entities; (3) student
6  vaccinations offered to allied health students and other higher education students; and (4) other
7  fee-based general adult health vaccinations offered to the adult non-Medicaid population.

8      42.    Indeed, SNHD and The Vaccine Center both advertise these various product
9  markets on their websites.  SNHD's website has separate pages devoted to "Travel Vaccine
10 Clinics," an "Adult Immunization Program" designed for occupational vaccinations, "Health
11 Care Professionals," and "Adult" vaccines.  Likewise, The Vaccine Center's website has
12 separate pages devoted to "Travel Medicine Services," "Employee Health Services," and
13 "Student Health Services."

14     43.    Upon information and belief, Plaintiff alleges that, as a result of the
15 aforementioned price discrimination, SNHD is able to offer travel vaccines, occupational
16 vaccines, student vaccines, and general adult health vaccines at prices significantly lower than
17 The Vaccine Center and other private clinics and doctors.  This is because the vaccines for
18 Hepatitis A[3] and Hepatitis B are two of the most common vaccines administered to patients in
19 the relevant product markets, and therefore significantly affect the overall prices regularly
20 charged for the relevant products.  Moreover, due to its price advantage over Hepatitis A,
21 Hepatitis B, and other vaccines unlawfully purchased from GSK under the 340B Program,
22 SNHD is able to resell other vaccines (such as Yellow Fever and Typhoid) that it obtains from
23 other drug manufacturers at below-market prices that undercut its competition.

24     44.    Upon information and belief, Plaintiff alleges that, using its unlawfully obtained
25 price advantage, SNHD over time has expanded its fee-based vaccination services for the adult
26 non-Medicaid population and has exercised price leadership control over the relevant markets.

27
28   [3] In fact, Hepatitis A is the most often recommended vaccine for travel based on CDC guidelines.

1 It has succeeded in securing a high percentage of the total industry sales within the relevant
2 markets, and has generated millions of dollars in revenue from these fee-based vaccination
3 services.

4     45.     For example, based on information obtained from SNHD, SNHD has entered
5 into lucrative contracts for vaccination services with for-profit and governmental entities such
6 as MGM Resorts Health Plan, Sands Expo and Convention Center, Silver Nugget Gaming,
7 LLC, Boulder City, and the Las Vegas Hilton. Further, SNHD continues to solicit a number of
8 for-profit and governmental entities in Southern Nevada in an attempt to gain additional control
9 over the relevant product and geographical markets.

10     46.     Upon information and belief, Plaintiff alleges that several private clinics and
11 doctors who previously offered vaccination services in the relevant markets have gone out of
12 business because SNHD undercut their prices. Other private clinics and doctors are currently
13 struggling to compete against SNHD and possess a small market share.

14     47.     Upon information and belief, Plaintiff alleges that, at present, The Vaccine
15 Center is the only significant remaining competitor to SNHD that possesses a significant market
16 share in the relevant markets. It also has suffered a substantial loss of business and revenue as a
17 result of Defendants' wrongful conduct, including at its two existing locations in Las Vegas and
18 because it has lost out on profitable opportunities to expand its operation to other locations.

19 <center>**V.**</center>
20 <center>**FIRST CLAIM FOR RELIEF**</center>
21 <center>**(Price Discrimination in Violation of 15 U.S.C. § 13(a) as to GSK)**</center>

22     48.     The Vaccine Center repeats and re-alleges the allegations contained in the
23 preceding paragraphs as if fully set forth herein.

24     49.     The price discrimination by GSK as alleged above is in violation of the
25 Robinson-Patman Price Discrimination Act (15 U.S.C. § 13(a)).

26     50.     Upon information and belief, Plaintiff alleges that GSK is a manufacturer of
27 vaccines. It sells these commodities in Nevada and many other states within the U.S.

28

51. Upon information and belief, Plaintiff alleges that GSK has charged SNHD prices for its vaccines that are substantially less than the prices contemporaneously charged to The Vaccine Center for the identical products. Such price differentials exceed any amounts which might be justified by different quantities in which such commodities are sold to The Vaccine Center or SNHD or different methods of delivery to the two entities.

52. The Vaccine Center is informed and believes that on multiple occasions, SNHD has purchased vaccines from GSK that were shipped across state lines. Such purchases were roughly contemporaneous with the purchases of products of like grade and quality by The Vaccine Center. GSK charged The Vaccine Center more for those products than it charged SNHD.

53. By reason of GSK's discriminatory pricing, SNHD has been enabled to significantly undercut the prices that The Vaccine Center and other suppliers can profitably offer for the same vaccines. As a consequence, competition in the relevant markets has been substantially lessened and SNHD has captured a high market share of the relevant markets, which has tended to create a monopoly. GSK's price discrimination thereby adversely injures or prevents competition for vaccines in the relevant markets to the advantage of SNHD.

54. The Vaccine Center is further informed and believes that, but for the discriminatory pricing, The Vaccine Center would have provided immunization services to a much larger number of consumers in the relevant markets. GSK's price discrimination has thereby caused The Vaccine Center to suffer economic injury in an amount in excess of $75,000.

## SECOND CLAIM FOR RELIEF

**(Receipt of Discriminatory Prices in Violation of 15 U.S.C. § 13(f) as to SNHD)**

55. The Vaccine Center repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

56. The Vaccine Center is informed and believes that SNHD knowingly induced and/or received a discriminatory price in violation of the Robinson-Patman Price Discrimination Act (15 U.S.C. § 13(f)).

57. SNHD received preferential prices from GSK for vaccines that gave it a price advantage over The Vaccine Center and other private clinics and doctors in the relevant markets.

58. Upon information and belief, Plaintiff alleges that at the time of its vaccine purchases, SNHD knew that it received those vaccines under the 340B Program at substantially lower prices than its competitors paid under similar circumstances.

59. At the time of its vaccine purchases, SNHD was on notice that the preferential prices it received were unlawful under the Robinson-Patman Act. In fact, The Vaccine Center advised SNHD on multiple occasions that its actions violated the Robinson-Patman Act. Additionally, the GAO Report, a congressional investigation, and articles published in Nevada journals placed SNHD on notice of its unlawful conduct.

60. Under all the circumstances, SNHD should have known that there was little likelihood of a defense for GSK under the Robinson-Patman Act or the 340B Program.

### THIRD CLAIM FOR RELIEF

**(Violation of Nevada Unfair Trade Practice Act pursuant to NRS 598A.060(1)(e) as to SNHD)**

61. The Vaccine Center repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

62. SNHD has violated the Nevada Unfair Trade Practices Act by knowingly inducing and/or receiving discriminatory prices in violation of the Robinson-Patman Price Discrimination Act (15 U.S.C. § 13(f)) as outlined above.

### FOURTH CLAIM FOR RELIEF

**(Aiding and Abetting Liability as to Apexus)**

63. The Vaccine Center repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

64. Through its conduct, Apexus substantially assisted and encouraged, and continues to substantially assist and encourage, SNHD's and GSK's respective violations of the Robinson-Patman Act.

65. Upon information and belief, Plaintiff alleges that, among other things, Apexus has and continues to:

    a. Assist SNHD and other covered entities obtain unlawful price discounts on vaccines from GSK as "value added products" under the 340B Program even though Apexus knows that the Program expressly exempts vaccines;

    b. Encourage SNHD and other covered entities to use the discounted vaccines that they unlawfully obtain from GSK to compete with private clinics and doctors in treating persons who do not qualify as their patients; and

    c. Assist and encourage GSK to participate in this conspiracy by furnishing SNHD and other covered entities with unlawful price discounts on vaccines.

66. As a proximate result of Apexus's aiding and abetting, The Vaccine Center has suffered damages in excess of $75,000.00. Additionally, due to the intentional, willful and malicious nature of SNHD's actions, The Vaccine Center is entitled to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF

(**Intentional Interference with Prospective Economic Advantage as to SNHD**)

67. The Vaccine Center repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

68. The Vaccine Center has prospective contractual relationships with patients in need of vaccinations within the relevant product and geographical markets.

69. Upon information and belief, Plaintiff alleges that SNHD was aware of The Vaccine Center's prospective business relationships and engaged in intentional and wrongful conduct designed to disrupt and interfere with those relationships.

70. SNHD's conduct in interfering with such prospective business relationships is intentional, malicious and without justification. SNHD's conduct was undertaken solely to

14
AMENDED COMPLAINT

1  decrease, if not eliminate, competition so that SNHD can continue to acquire discriminatory
2  pricing and profits on its vaccinations. SNHD's conduct was not privileged and was without
3  any legitimate business justification. SNHD has knowingly engaged in such wrongful conduct
4  for the purpose of excluding competition and depriving consumers of the benefits of free and
5  open competition.

6   71.   SNHD's conduct has not only caused and continues to cause actual financial
7  injury to The Vaccine Center, but it has also made it difficult for The Vaccine Center to survive
8  in this relevant market as a viable competitor.

9   72.   Due to the intentional, willful and malicious nature of SNHD's actions, The
10 Vaccine Center is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, for the reasons stated above, Plaintiff prays for judgment as follows:

a)   For damages according to proof for all claims for relief;

b)   That all such damages for the first through second claims for relief be trebled pursuant to 15 U.S.C. § 15 and for the third claim for relief pursuant to NRS 598A.210;

c)   For punitive damages for the fourth and fifth claims for relief;

d)   For an injunction directing the termination of the alleged anticompetitive conduct and injunctive relief that eliminates the potential that it will recur for the first and second claims for relief pursuant to 15 U.S.C. § 26, for the third claim for relief pursuant to NRS 598A.210, and for the fourth and fifth claims for relief;

e)   For interest pursuant to the first through second claims for relief pursuant to 15 U.S.C. § 15, for the third through fifth claims for relief pursuant to NRS 17.130;

f)   For the costs of this suit for the first and second claims for relief pursuant to 15 U.S.C. § 15, for the third claim for relief pursuant to NRS 598A.210, and for the fourth and fifth claims for relief pursuant to NRS 18.020;

g)   For reasonable attorneys' fees for the first and second claims for relief pursuant to 15 U.S.C. § 15, for the third claim for relief pursuant to NRS 598A.210, and for the fourth and fifth claims for relief; and

15
AMENDED COMPLAINT

     h)     For other such relief as this Court deems just and equitable.

DATED this 16th day of June, 2014.

                                            Respectfully submitted by:

                                            /s/  Maxwell M. Blecher
                                        Richard L. Kellner, Esq. (NV #8139)
                                        KABATECK BROWN KELLNER, LLP
                                        644 South Figueroa Street
                                        Los Angeles, California 90017
                                        Telephone: (213) 217-5000
                                        Facsimile:  (213) 217-5010
                                        *Attorneys for Plaintiff*

                                        Billie-Marie Morrison, Esq. (NV #7689)
                                        CRAIG P. KENNY & ASSOCIATES
                                        501 S. 8th Street
                                        Las Vegas, NV  89101
                                        Tel: (702) 380-2800
                                        Facsimile: (702) 380-2833

                                        Maxwell M. Blecher (Admitted Pro Hac Vice)
                                        Courtney A. Palko (Admitted Pro Hac Vice)
                                        BLECHER COLLINS PEPPERMAN & JOYE, P.C.
                                        515 South Figueroa Street, Suite 1750
                                        Los Angeles, California 90071-3334
                                        Tel:  (213) 622-4222
                                        Facsimile: (213) 622-1656

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims and causes of action in this lawsuit.

DATED this 16th day of June, 2014.

              Respectfully submitted by:

              /s/  Maxwell M. Blecher
              Richard L. Kellner, Esq. (NV #8139)
              KABATECK BROWN KELLNER, LLP
              644 South Figueroa Street
              Los Angeles, California 90017
              Telephone: (213) 217-5000
              Facsimile:  (213) 217-5010
              *Attorneys for Plaintiff*

              Billie-Marie Morrison, Esq. (NV #7689)
              CRAIG P. KENNY & ASSOCIATES
              501 S. 8th Street
              Las Vegas, NV  89101
              Tel: (702) 380-2800
              Facsimile: (702) 380-2833

              Maxwell M. Blecher (Admitted Pro Hac Vice)
              Courtney A. Palko (Admitted Pro Hac Vice)
              BLECHER COLLINS PEPPERMAN & JOYE, P.C.
              515 South Figueroa Street, Suite 1750
              Los Angeles, California 90071-3334
              Tel:  (213) 622-4222
              Facsimile: (213) 622-1656

59793.1

CERTIFICATE OF SERVICE

I certify that on June 16, 2014, and according to Fed. R. Civ. P. 5(b), I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy, postage prepaid and addressed to parties to receive such manner of service of the foregoing *AMENDED COMPLAINT FOR: 1. Price Discrimination; 2. Receipt of Discriminatory Prices;  3. Unfair Trade Practices; 4. Aiding and Abetting Liability; and 5. Intentional Interference with Prospective Economic Advantage JURY TRIAL DEMANDED* identified on the Court-generated Notice of Electronic Filing.

   /s/  Maxwell M. Blecher
BLECHER COLLINS PEPPERMAN &JOYE, P.C.
Counsel for Plaintiff