1  Stanley W. Parry, Esq.
   Nevada Bar No. 1417
2  Edward Chang, Esq.
   Nevada Bar No. 11783
3  BALLARD SPAHR LLP
   100 North City Parkway, Suite 1750
4  Las Vegas, Nevada 89106-4617
   Telephone: (702) 471-7000
5  Facsimile: (702) 471-7070
   E-mail:  parrys@ballardspahr.com
6  E-mail:  change@ballardspahr.com

7  Stephen J. Kastenberg, Esq.
   (admitted pro hac vice)
8  Jason A. Leckerman, Esq.
   (admitted pro hac vice)
9  Jessica M. Anthony, Esq.
   (admitted pro hac vice)
10 BALLARD SPAHR LLP
   1735 Market Street, 51st Floor
11 Philadelphia, Pennsylvania 19103
   Telephone:  (215) 665-8500
12 Facsimile:  (215) 864-8999
   E-mail:  kastenberg@ballardspahr.com
13 E-mail:  leckermanj@ballardspahr.com
   E-mail:  anthonyj@ballardspahr.com
14
   *Attorneys for Defendant*
15 *GlaxoSmithKline LLC*

16              UNITED STATES DISTRICT COURT

17                   DISTRICT OF NEVADA

18 THE VACCINE CENTER LLC, d/b/a          Case No. 2:12-cv-01849-JCM-NJK
   THE VACCINE CENTER AND TRAVEL
19 MEDICINE CLINIC, a Nevada limited      **DEFENDANT GLAXOSMITHKLINE'S**
   liability company,                     **REPLY IN FURTHER SUPPORT OF**
20                                         **MOTION FOR SUMMARY**
                   Plaintiff,             **JUDGMENT**
21
   vs.                                    (Oral Argument Requested)
22
   GLAXOSMITHKLINE LLC, a Delaware
23 limited liability company; APEXUS,
   INC., a Delaware corporation;
24 SOUTHERN NEVADA HEALTH
   DISTRICT; DOES I – X and ROE
25 CORPORATIONS I – X, inclusive,

26                 Defendants.

27

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMEAST #19989066 v1

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56-1, and the Scheduling Order entered June 3, 2014, Defendant GlaxoSmithKline LLC ("GSK"), by and through its undersigned counsel, submits the following reply memorandum in further support of its Motion for Summary Judgment (Docket No. 168).

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

After receiving hundreds of pages of discovery, and pursuant to an agreed upon schedule, on June 16, 2014 The Vaccine Center ("plaintiff") filed an amended complaint to serve as the refined and focused template for its case and, specifically, for summary judgment briefing.  Plaintiff's amended complaint, like its original, asserts claims based on GSK's discounted sale of vaccines to Southern Nevada Health District ("SNHD") through the 340B Prime Vendor Program, a program Apexus administers under the supervision and aegis of the federal government. Plaintiff alleges that the sales to SNHD amount to price discrimination, prohibited by the antitrust laws, specifically the Robinson-Patman Act.  As agreed by the parties and approved by the Court, this initial round of summary judgment briefing has focused on two independently dispositive, threshold issues.  The first issue is whether defendants' vaccine sales made through the federal government's Prime Vendor Program renders those sales immune from antitrust challenge.  The second is whether the vaccination program of SNHD—a statutorily created, charitable public health entity—brings the vaccine sales within the "own use" exemption applicable to charitable institutions when the challenged products—vaccines—are being used to further the institution's mission.

Plaintiff's opposition brief offers no basis for denying summary judgment on either ground.  In fact, plaintiff's main theme is just that foreshadowed by GSK:  that the Prime Vendor Program has broadened beyond its "entire intent."  (Pl. Mem. at 1-2.)  But that beef is one that plaintiff, a for-profit entity ineligible for the program, must take up with the Health Resources and Services Administration ("HRSA").

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1    The specific legal issues raised by plaintiff are no more apt.  Its repeated
2  refrain that Congress excluded vaccines from the "340B Program" and did not
3  authorize inclusion of vaccines as a value added product is of no consequence.  There
4  is no dispute that vaccines are excluded from the 340B Drug Pricing Program.  The
5  sales plaintiff complains of are pursuant to the Prime Vendor Program, which is a
6  separate, congressionally mandated, program, not subject to the same restrictions as
7  the 340B Drug Pricing Program.  As explained in GSK's opening memorandum and
8  further below, the entire point of the Prime Vendor Program is to provide discounts
9  extending *beyond* the reach of the 340B Drug Pricing Program.  In furtherance of
10 this objective, HRSA's Office of Pharmacy Affairs *directed* that the Prime Vendor
11 Program include discounts on vaccines that would otherwise not be available.

12    Ignoring (but not disputing) this fact, plaintiff extends its diversionary tactics
13 by relying on case law relating to a type of immunity not asserted here and trying to
14 draw a false distinction between Apexus and GSK based on privity of contract.
15 Instead, as plaintiff's counsel acknowledged at the hearing on defendants' motion to
16 dismiss, it is <u>Byers v. Intuit., Inc.</u>, 600 F.3d 286 (3d Cir. 2010), that set forth the
17 relevant standard for the conduct-based immunity.  (Docket No. 114, Tr. Sept. 12,
18 2013 Hearing on Mot. to Dismiss).  None of plaintiff's efforts can save it from the fact
19 that GSK, by selling vaccines to SNHD at discounted rates pursuant to the Prime
20 Vendor Program, was acting with the endorsement of the federal government—
21 pursuant to HRSA's direction that vaccines be included in the program—and is
22 therefore immune from antitrust liability.

23    Bereft of persuasive defenses to GSK's assertion of conduct based immunity,
24 plaintiff in its brief also refers to GSK sales to SNHD with terms or conditions
25 outside of the Prime Vendor Program, including those through a federal Centers for
26 Disease Control ("CDC") program.  But plaintiff's whole claim is based on sales made
27 under the Prime Vendor Program.  Whether GSK or others are supposedly abusing
28 the Prime Vendor Program by selling under terms or with conditions that violate the

1    Program—as plaintiff seems to assert—is again a concern to be taken up with the

2    government, not here, and not through the antitrust laws.  If plaintiff means that

3    there are other sales to which it also somehow has a complaint, that is a claim not

4    articulated or developed here, and which should be brought another day.

5        Plaintiff's argument with regards to the "own use" exemption to the Robinson-

6    Patman Act is fundamentally flawed as well.   GSK explained in its opening

7    memorandum that, in accordance with the standard established by the Supreme

8    Court and the Ninth Circuit, the provision of vaccines, particularly those at issue

9    here, furthers SNHD's institutional mission of protecting and promoting "the health,

10   the environment and well-being of Southern Nevada residents and visitors."  (GSK

11   Mot. at § III.B.2.)  Rather than address GSK's argument head on, plaintiff attempts

12   to circumvent binding precedent from DeModena v. Kaiser Foundation Health Plan,

13   743 F.2d 1388 (9th Cir. 1984), in order to apply the Supreme Court's holding in

14   Abbott Laboratories v. Portland Retail Druggists Assoc., 425 U.S. 1 (1976), in the

15   exact way the Ninth Circuit prohibits (and in a way that in any event misreads

16   Abbott itself).    But DeModena is binding on this Court and its application

17   demonstrates why the own use exemption applies here.

18   I.   **ARGUMENT**

19        A.   **Plaintiff's Immunity Arguments Do Not Address the Merits of GSK's**
              **Immunity Defense**

20

21        Plaintiff makes three arguments opposing GSK's defense that its participation

22   in the 340B Prime Vendor Program is immune from antitrust scrutiny:  (i) sales by

23   GSK to SNHD were made outside of the 340B Program; (ii) no federal regulation or

24   statute *requires* drug manufacturers to discount vaccines; and (iii) GSK is not in

25   privity with the federal government.  (See Pl. Mem. at 16-25.)  Each of plaintiff's

26   arguments misses the mark entirely.

27

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1          **1.     Plaintiff's Argument That Certain of GSK's Sales to the Health
2                   District Are Outside 340B Prime Vendor Program Is Irrelevant to
                    Plaintiff's Claims.**

3          Plaintiff's amended complaint is premised on the theory that vaccine sales

4   made pursuant to the Prime Vendor Program constitute price discrimination under

5   the Robinson-Patman Act and makes no mention of any alleged harm from sales

6   outside of the program.   As explained in detail in GSK's and Apexus's opening

7   memoranda, the Prime Vendor Program is a congressionally enacted program

8   administered by the HRSA under which drug manufacturers agree to provide

9   vaccines, among other things, to eligible charitable and public health entities at

10  discounted rates.  (Apexus Mem. at § I; GSK Mem. at § II.)  Acting pursuant to and in

11  accordance with HRSA's policy governing the administration of the Prime Vendor

12  Program, GSK's participation in the program is immune from antitrust scrutiny.

13  Plaintiff now claims that GSK is not immune because "GSK's sale of vaccines was not

14  part of the 340B Program," (Pl. Mem. at 18), and such sales are in "violation of

15  [GSK's] contract with Apexus." (Id. at 2.)  Plaintiff cannot, however, amend its claims

16  or raise a new theory of its case for the first time in opposition to summary judgment.

17  <u>McNeely v. County of Sacramento</u>, 344 Fed.Appx. 317 (9th Cir. 2009).  To the extent

18  it is now attempting to do so, these arguments have been waived.

19         Even after having the opportunity to amend its complaint, plaintiff continued

20  to limit its claims to the 340B Program.  (Docket No. 154.)  At the time plaintiff filed

21  its Amended Complaint, it had received, through discovery from GSK and SNHD, not

22  only the contractual documents referenced in its summary judgment response but

23  also the sales data for the four vaccines at issue sold by GSK to SNHD from 2006

24  through 2013.  Yet the Amended Complaint does not revise plaintiff's singular focus

25  on the 340B Program and makes no mention of any sales other than those made

26  pursuant to the 340B Program.  In any event, it is for Apexus, not The Vaccine

27  Center, to assert a violation of its contract with GSK.  To be sure, plaintiff may

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1    complain to HRSA about such conduct as well, if it wishes.  But, sales made outside

2    of the 340B Prime Vendor Program are not relevant to this case.

**2.    Vaccine Sales Are Properly Included as Part of the Prime Vendor Program and Any Dispute That They Are Not Is an Issue for Plaintiff to Raise with HRSA**

5        Despite its diversionary efforts, plaintiff cannot escape the stark reality that

6    its grievance is really with the administration of the Prime Vendor Program by the

7    federal government, not with GSK.  HRSA's Office of Pharmacy Affairs directed that

8    vaccines be included as part of the Prime Vendor Program.  (See GSK Mot. at 8;

9    Apexus Mot. at § IV.E.)   From that point on, HRSA has continued to promote the

10   inclusion of vaccines as value-added products as part of the program, including in

11   reports to Congress and through its Request for Proposal for selecting a Prime

12   Vendor.  (See GSK Mot. at 8-9; Apexus Mot. at § IV.E.)

13       Plaintiff tries to avoid the misplaced nature of its lawsuit, as well as the

14   undisputed fact that GSK's sale of vaccines under the Prime Vendor Program was in

15   accordance with HRSA's directive to include vaccines in the program, by pointing to

16   the exclusion of vaccines from the 340B Drug Pricing Program as somehow tainting

17   GSK's and Apexus's conduct.  But whether or not vaccines are part of the 340B Drug

18   Pricing Program is irrelevant to the inquiry here and not a basis for antitrust

19   litigation.  As explained in detail in Apexus's and GSK's summary judgment motions,

20   the Prime Vendor Program is distinct from the 340B Drug Pricing Program.

21   Mandated by federal statute, the Prime Vendor Program is premised on the notion of

22   providing discounts and services *not* already offered by the Drug Pricing Program.

23   42 U.S.C. § 256b(a)(8).   Thus, by its very nature, the Prime Vendor Program is

24   designed to reach beyond the discounts offered to covered entities as part of the Drug

25   Pricing Program in order to "stretch scarce Federal resources as far as possible" by

26   providing greater discounts on covered drugs and discounts on additional value

27   added products.  As explained *supra*, vaccines were added to the Prime Vendor

28   Program with HRSA's consent and endorsement.  And the contract between Apexus,

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

acting on behalf of HRSA as the Prime Vendor, and GSK covers vaccines—a fact plaintiff cannot and does not dispute. When a covered entity such as SNHD places an order for vaccines, GSK verifies that the entity is eligible to make the purchase based on a list of covered entities provided by Apexus.[1] If plaintiff disagrees with vaccines being sold in this manner, its complaint lies with the federal government, not the entities acting pursuant to the program's directives.[2]

Plaintiff in effect concedes that if vaccines are sold as part of the Prime Vendor Program at the federal government's direction, Defendants' conduct is immune. Plaintiff admits that it "does not dispute that Defendants may be immune from antitrust liability for their involvement in selling and purchasing covered outpatient drugs—as opposed to *vaccines*—at a price discount under the 340B Program." (Pl. Mem. at 17 n.11.) Plaintiff confirms that "Congress has explicitly authorized price discrimination" through its decision to establish parameters for the price at which outpatient drugs may be sold to covered entities (Id.) By extension, if the inclusion of vaccines at discounted prices is similarly authorized by the government, defendants' conduct is also immune.

With regards to the Prime Vendor Program, the federal government, acting through HRSA's Office of Pharmacy Affairs, directed the inclusion of vaccines. (See Apexus Mot. at § IV.E-F; GSK Mot. at § III.A.) Plaintiff's grievance that Congress excluded vaccines from the definition of "covered outpatient drugs" (Pl. Mem. at 17 n.11) applies to the 340B Drug Pricing Program. Plaintiff never grapples with the sale of vaccines as a part of the Prime Vendor Program. Conduct-based immunity

---

[1] See HRSA Office of Pharmacy Affairs, Covered Entity Search, available at http://opanet.hrsa.gov/opa/CESearch.aspx.

[2] To the extent plaintiff implies that GSK sales to SNHD outside of the 340B Prime Vendor Program somehow violate the terms of the contract between Apexus and GSK (see Pl. Mem. at 2), The Vaccine Center has no standing to enforce the terms of a contract of which it is neither a party nor an intended third party beneficiary. German Alliance Ins. v. Home Water Supply, 226 U.S. 220, 230 (1912).

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1   does not require a statutory mandate but, as plaintiff also concedes, requires that "(1)

2   the government agency is acting pursuant to a clearly defined policy or program; and

3   (2) the private party is acting at the direction or consent of the government agency."

4   (Pl. Mem. at 16 citing <u>Byers</u>, 600 F.3d at 295.) Extending plaintiff's own reasoning, if

5   vaccines are properly included in the ***Prime Vendor Program*** at the government's

6   direction—which they indisputably are—Defendants' involvement in selling and

7   purchasing vaccines under the program is similarly immune.

8                    **3.     Plaintiff Relies on an Unrelated Theory of Immunity**

9          When addressing GSK's immunity defense directly, plaintiff relies extensively

10  on the argument that the decision in <u>Phonetele, Inc. v. Am. Tel. & Tel. Co.</u>, 664 F.2d

11  716 (9th Cir. 1981), does not support immunity because no statute or regulation

12  requires GSK to discount vaccines. (Pl. Mem. at 19-22.) But <u>Phonetele</u> involves a

13  different immunity ***not*** asserted by GSK. The defendants in <u>Phonetele</u> asserted

14  immunity derived from the regulatory scheme imposed by the Communications Act of

15  1934 ("FCA") as implemented by the Federal Communications Commission ("FCC").

16  <u>Phonetele</u>, 664 F.2d at 727. This form of implied antitrust immunity is premised on

17  either the pervasive regulation of an industry by an agency or the delegation of self-

18  regulating authority. <u>Id.</u> at 726-29. Conduct-based immunity, instead, is focused on

19  specific conduct expressly sanctioned by the federal government. Indeed, one of the

20  distinctions between the type of immunity at issue in <u>Phonetele</u> and GSK's defense

21  here is that the immunity enjoyed by regulated entities is without regard to whether

22  the agency directs or approves the conduct at issue. <u>Id.</u> In contrast, conduct-based

23  immunity is applicable here because HRSA has directed and endorses the sale of

24  vaccines pursuant to the Prime Vendor Program. Accordingly, plaintiff's reliance on

25  <u>Phonetele</u> is misplaced and has no bearing on the conduct-based immunity asserted

26  by GSK.

27

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

### 4.   Plaintiff's Privity Argument Is a Red Herring

Plaintiff's argument that, for immunity to apply, GSK must be in "privity with any federal agency" fares no better.   As a threshold matter, privity is not a prerequisite to conduct-based immunity.   In <u>Name.Space, Inc. v. Network Solutions, Inc.</u>, the Second Circuit made clear that "mere status as a government contractor" was insufficient to confer immunity.   202 F.3d 573, 581 (2d Cir. 2000).   Rather, the focus was on the ***conduct*** at issue.   The <u>Byers</u> court made this very point in finding that "conformance" to IRS policy was the basis for immunity.   <u>Byers v. Intuit, Inc.</u>, 600 F.3d 286, 295 (3d Cir. 2010).

Moreover, there is no dispute that GSK has a contract with Apexus governing GSK's participation in the Prime Vendor Program.   Apexus, as the Prime Vendor of the program, acts on behalf of HRSA, the unit of the federal Health and Human Services Department tasked with administering the program.   That GSK's contract is with HRSA's program administrator rather than the agency itself is irrelevant when immunity considers the conduct of the parties.   To find otherwise would produce the anomalous result that Apexus, but not GSK, is entitled to conduct-based immunity, even though Apexus is the federal proxy charged with implementing the Prime Vendor Program and the government endorses GSK's conduct pursuant to the program.

### B.   Plaintiff Ignores Binding Ninth Circuit Precedent for Applying the "Own Use" Exemption

The Court should award summary judgment for the independent reason that GSK's sales to SNHD are protected by the "own use" statutory exemption to the Robinson-Patman Act.

The Vaccine Center's response to this issue suffers from two fundamental problems.   First, it misstates the legal standard for the "own use" exemption set forth by the Supreme Court in <u>Abbott Laboratories v. Portland Retail Druggists Assoc.</u>, 425 U.S. 1 (1976).   Second, it ignores the later, binding Ninth Circuit precedent

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1  interpreting <u>Abbott</u> and further making clear the "own use" standard to be applied

2  here.  The Robinson-Patman Act does not reach purchases of supplies to "schools,

3  colleges, universities, public libraries, churches, hospitals, and charitable institutions

4  not operated for profit" that are "for their own use."  15 U.S.C. § 13(c).  In <u>Abbott</u>, the

5  Court addressed whether ten enumerated activities of the hospital in that case

6  qualified as "own use" and, as a result, were exempt from antitrust scrutiny.   <u>Id.</u>

7  Plaintiff tries to shoehorn the conduct at issue here into one of those ten categories—

8  namely, prescriptions filled at a hospital pharmacy by a "walk in" customer not

9  otherwise treated at the hospital.  The <u>Abbott</u> Court held that this conduct was not

10  for the plaintiff hospital's own use.  Plaintiff here claims the same result by definition

11  should be reached here.   But the point of <u>Abbott</u> was in evaluating whether the

12  challenged conduct fell within the charitable mission of a hospital—and indeed the

13  specific hospital at issue there.

14        Not surprisingly, the Ninth Circuit, in <u>DeModena v. Kaiser Foundation Health</u>

15  <u>Plan</u>, prohibits the precise exercise attempted by plaintiff, explaining:

16              Appellants ask us to adopt the categorical rules set forth in
17              <u>Abbott Labs</u> wholesale and apply them to this case.  This
                suggestion, however, ignores the manner in which these
                rules were originally derived and would, if adopted, violate
18              the spirit, if not the letter of the Supreme Court's decision.

19  743 F.2d 1388, 1393 (9th Cir. 1984).  As the Ninth Circuit further explained, the

20  <u>Abbott</u> Court "generated its categorical rules by first determining the basic

21  institutional function of a non-profit, fee-for-service hospital and then deciding which

22  sales fit within this institutional function."   <u>Id.</u>   Accordingly, the <u>DeModena</u> court

23  instructs:

24              to follow the true mandate of <u>Abbott Labs</u>, we should not
                simply adopt the categorical rules set forth in that decision,
25              but should instead determine the basic institutional
                function of the [entity] and then decide which sales are in
26              keeping with this function.

27  <u>Id.</u>

28

1    The Ninth Circuit's interpretation of how to apply <u>Abbott</u> is binding on this

2    Court.  Yet plaintiff ignores <u>DeModena</u> by focusing solely on the distinction between

3    patients of a hospital and "walk in" customers of a pharmacy made by the <u>Abbott</u>

4    Court.  This distinction, while relevant when considering the institutional function of

5    a hospital, is of no significance when considering the institutional function of a

6    community health organization like SNHD.   A proper application of the Ninth

7    Circuit's mandate first identifies SNHD's institutional function and then considers

8    what sales fit within that function, a task plaintiff disregards completely.

9        SNHD's mission, to promote and protect "the health, the environment and

10   well-being of Southern Nevada residents and visitors," encompasses, among other

11   things, the prevention and control of communicable diseases.   Plaintiff does not

12   dispute this.    Nor does it dispute that this directive is served by SNHD's

13   immunization program, as explained in detail in GSK's motion.   (GSK Mot. at

14   § III.B.2.)    Moreover, this goal is not limited to "patients" or individuals in a

15   contractual relationship with SNHD, as plaintiff suggests.   Rather, the effective

16   control and prevention of communicable disease (which undeniably improves the

17   health of the community at large) goes hand-in-hand with improved access to

18   vaccinations, including those used for travel.   Indeed, plaintiff's suggestion that the

19   provision of vaccines required for travel out of the country is "irrelevant" to the

20   prevention of the spread of disease (Pl. Mem. at 22 n.13), defies logic.   Individuals

21   traveling to foreign countries, particularly locations with diseases not common to the

22   United States, risk not only getting ill themselves but also carrying a disease back to

23   their home and infecting others.  This is precisely the reason why travel vaccines are

24   a critical aspect of attaining the high vaccination rates needed for herd immunity,

25   and thus furthering SNHD's mission.

26       Even setting aside that <u>DeModena</u> is binding precedent, this Court should still

27   decline to adopt plaintiff's mechanical application of the categorical rules from

28   <u>Abbott</u>.  This Court should not conflate the Supreme Court's articulation of the test

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1   for determining "own use" with its application of that test to one of the enumerated

2   examples in the statute—the hospital setting.  There is no dispute that SNHD is not

3   a hospital but otherwise qualifies as a "charitable institution" for purposes of the

4   NPIA.  How the <u>Abbott</u> Court defined a hospital's institutional function, therefore,

5   serves little purpose in determining whether the sales at issue here promote SNHD's

6   mission.  As explained above and in GSK's motion, providing vaccinations to the

7   community in the manner done so by SNHD promotes the organization's mission of

8   improving "the health, the environment and well-being of Southern Nevada residents

9   and visitors."  As a result, GSK's sales to SNHD qualify for the own use exemption

10  from the Robinson-Patman Act.

## II.   CONCLUSION

12          For the reasons above, as well as those set forth in GSK's motion, GSK

13  respectfully requests that this Court enter summary judgment in favor of GSK and

14  against The Vaccine Center.

15          Dated:  October 6, 2014.

16                              By:  /s/ Jessica M. Anthony
17                                   Stanley W. Parry, Esq.
                                     Nevada Bar No. 1417
                                     Edward Chang, Esq.
18                                   Nevada Bar No. 11783
                                     BALLARD SPAHR LLP
19                                   100 North City Parkway, Suite 1750
                                     Las Vegas, Nevada 89106
20                                   Telephone:  (702) 471-7000

21                                   Stephen J. Kastenberg, Esq.
                                     (admitted pro hac vice)
22                                   Jason A. Leckerman, Esq.
                                     (admitted pro hac vice)
23                                   Jessica M. Anthony, Esq.
                                     (admitted pro hac vice)
24                                   BALLARD SPAHR LLP
                                     1735 Market Street, 51st Floor
25                                   Philadelphia, Pennsylvania 19103
                                     Telephone:  (215) 665-8500

26
                                     *Attorneys for Defendant*
27                                   *GlaxoSmithKline LLC*

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

## CERTIFICATE OF SERVICE

I certify that on October 6, 2014, a true copy of **Defendant GlaxoSmithKline's Reply in Further Support of Motion for Summary Judgment** was filed via the Court's CM/ECF System and electronically served by the Court on all parties in interest.

 /s/ Sarah Walton
An employee of BALLARD SPAHR LLP

DMEAST #19989066 v1